**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Pollock,<br><br>                Plaintiff,<br><br>v.<br><br>Commission of Social Security,<br><br>                Defendant. | No. CV-15-01533-PHX-DLR<br><br>**ORDER** |

Plaintiff Stephanie Pollock appeals the Commissioner of Social Security's decision denying her application for disability insurance benefits. For the following reasons, the Commissioner's decision is affirmed.

## BACKGROUND

Pollock applied for disability insurance benefits in April 2012, alleging that she became disabled in October 2011. (A.R. 133.) Pollock appeared and testified at a hearing before an Administrative Law Judge ("ALJ") in November 2013. (*Id.* at 30-48.) A vocational expert ("VE") also testified. (*Id.*) In February 2014, the ALJ issued a written decision denying Pollock's application for disability insurance benefits. (*Id.* at 15-24.) The Appeals Council denied Pollock's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* at 1, 10.) This appeal followed.

## LEGAL STANDARD

The district court reviews only those issues raised by the party challenging the

ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## **DISCUSSION**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and

work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ determined that Pollock meets the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since her alleged disability onset date. (A.R. 17.) The ALJ found at step two that Pollock's bipolar disorder and back pain are severe impairments, but concluded at step three that they do not meet or medically equal the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 17-18.) At step four, the ALJ found that Pollock has the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: [she] has mild limitations in her ability to understand, remember and carry out simple instructions and to make judgments on simple work related decisions; she has moderate limitations in her ability to understand, remember and carry out complex instructions and in her ability to make judgments on complex work related decisions; she has moderate limitations in her ability to interact appropriately with supervisors and coworkers; and she has moderate limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting.

(*Id.* at 19.) Based on this RFC, the ALJ found that Pollock is unable to perform her past relevant work as a certified nursing assistant. (*Id.* at 22.) At step five, however, after considering Pollock's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Pollock can perform. (*Id.* at 23.) Accordingly, the ALJ found that Pollock is not disabled within the meaning of the Social Security Act. (*Id.* at 24.)

Pollock argues that the ALJ erred by: (1) failing to articulate limitations associated with her back pain; (2) discrediting her subjective complaints; and (3) assigning no weight to the opinion of nurse practitioner Susan Anderson. (Doc. 13.)

**I. Pollock's Back Pain**

Pollock argues that the ALJ erred by not articulating limitations associated with her back pain, which the ALJ found was a severe impairment at step two. (Doc. 13 at 13-16.) She contends it is unknown whether she can perform other work in the national

economy "[w]ithout knowing what limitations the ALJ would have given for the back pain . . . ." (*Id.* at 16.)  The ALJ's decision, however, is not silent on the limitations associated with her back pain.  The ALJ found that Pollock retained the RFC to perform work "at all exertional levels," and determined that she has only nonexertional limitations. (A.R. 19.)   In other words, the ALJ assessed no limitations arising from her back pain, and Pollock incorrectly assumes that a severe impairment identified at step two requires corresponding exertional limitations at step four.  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Charter*, 80 F.3d 1273, 1290 (9th Cir. 1996).  It is based on medical evidence alone and reasonable doubts are resolved in favor of the claimant.  As such, a severe finding at step two does not require the ALJ to later find work-preclusive limitations after considering all other relevant evidence. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."); *Taylor v. Heckler*, 605 F. Supp. 407, 412 (D. Me. 1984) ("[A] determination that an impairment is "severe" for purposes of the second sequential severity test has no bearing on the proper application of the fourth test.").  Accordingly, although Pollock established that she suffered from severe impairments at step two, the ALJ did not err by concluding that Pollock has no work-preclusive exertional limitations arising from her back pain at step four.

**II. Credibility of Pollock's Symptom Testimony**

Pollock next argues that the ALJ improperly discredited her symptom testimony. (Doc. 13 at 16-19.)  In evaluating the credibility of a claimant's symptom testimony, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the

symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Here, Pollock reported dizziness, fatigue, hand tremors, and difficulty standing, walking, and sitting for extended periods of time. (A.R. 19-20.) She said that she experienced pain and fatigue when squatting, bending, or kneeling. (*Id.*) Additionally, Pollock complained of visual and auditory hallucinations, thoughts of aggression, and increased anxiety when around others. (*Id.*) The ALJ found that Pollock's impairments could reasonably be expected to cause her alleged symptoms, but concluded that Pollock's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (*Id.*) The ALJ offered four reasons for her conclusion.

First, the ALJ found that Pollock's complaints were inconsistent with the overall treatment record. (A.R. 20-21.) Inconsistency with the medical record is a sufficient basis for rejecting a claimant's allegations of disabling symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Substantial evidence supports the ALJ's finding. For example, Pollock's physical examinations revealed normal gait, coordination, and reflexes. (*Id.* at 20, 270, 506, 532, 535, 538-39.) An MRI and x-rays revealed an overall normal spine for someone of Pollock's age. (*Id.* at 20, 338, 424-25.) Additionally, although Pollock reported some instances of hallucinations to her mental health providers, she also reported that these symptoms were occurring less frequently. (*Id.* at 544.)

Second, the ALJ found that Pollock's symptoms improved with medication. (*Id.* at 20-21.) Improvement with conservative treatment is a sufficient basis for discrediting a claimant's allegations of disabling symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Substantial evidence supports the ALJ's finding. For example, treatment records show that Pollock experienced a 60-80% reduction in pain with medication, and that she experienced no side-effects. (A.R. 20, 531, 534, 540.) Additionally, Pollock's mental health records revealed that her hallucinations and mood improved over time with medication. (*Id.* at 20, 268, 471, 544, 589, 591.)

Third, the ALJ found that Pollock has made inconsistent statements about her symptoms. (A.R. 20.) The ALJ may rely on ordinary techniques of credibility evaluation when assessing a claimant's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Substantial evidence supports the ALJ's finding that Pollock inconsistently described her symptoms. For example, although she alleged that she suffers from hand tremors that make it difficult to function, she denied experiencing numbness/tingling, loss of motor skills, incoordination, or involuntary movements on multiple occasions. (A.R. 20, 526, 529, 532, 535, 538.)

Finally, the ALJ found that Pollock's daily activities were inconsistent with the reported severity of her symptoms. (*Id.* 20-21.) "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* Substantial evidence supports the ALJ's finding. Pollock reported that she kept busy taking online Pharmacy Technician courses. (A.R. at 18, 21, 37.) Although Pollock reported that she is struggling to finish a final course, the ALJ reasonably concluded that some of the mental abilities required to engage in online schooling are the same as those necessary for obtaining and maintaining employment. Accordingly, the ALJ did not err in finding Pollock's subjective symptom testimony not entirely credible.

**III. Nurse Practitioner Anderson's Opinion**

Finally, Pollock contends that the ALJ should have given more weight to the opinion of Anderson, a nurse practitioner. (Doc. 13 at 19-20.) Anderson opined that Pollock's "mental illness prevents her from working at this time. Her condition is fragile and she is easily stressed." (A.R. 568.) In weighing medical source opinions, Social Security regulations distinguish between acceptable medical sources and other sources. 20 C.F.R. § 404.1513. "[O]nly licensed physicians and certain other qualified specialists

are considered '[a]cceptable medical sources.'" *Molina*, 674 F.3d at 1111 (quoting § 404.1513(a)). The opinions of other sources, such as physicians' assistants and nurse practitioners, "are not entitled to the same deference." *Id.* (citing 20 C.F.R. § 404.1527; SSR 06-03p, 2006 WL 2329939). "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). Here, the ALJ properly rejected Anderson's opinion because it is was a conclusion "on an issue reserved to the Commissioner." (A.R. 21.) The ALJ also noted that Anderson's opinion was inconsistent with the overall medical record, which indicated improvement and stability over time. (*Id.*) These are germane reasons for discounting Ms. Anderson's opinion.[1]

## CONCLUSION

For the foregoing reasons, the ALJ's decision is free of legal error and supported by substantial evidence.

**IT IS ORDERED** that the final decision of the Commissioner is **AFFIRMED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 17th day of May, 2016.

Douglas L. Rayes
United States District Judge

---

[1] Pollock argues that the opinion of a nurse practitioner working under the close supervision of a medical doctor could be entitled to the same weight as that doctor. (Doc. 13 at 19 (citing *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996).) However, Pollock does not argue that Ms. Anderson worked under the close supervision of a medical doctor, nor does the record support such a finding.